**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 4:21-CR-00104 RLW |
| v. ) | |
| ) | |
| NICHOLAS P. HODGES, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Nicholas Hodges, through counsel, respectfully requests this Court follow the Plea Agreement, vary downward from the guideline range pursuant to 18 U.S.C. §3553(a)(2) factors, and sentence Defendant justly. When fashioning a sentence, Defendant respectfully requests the Court consider five years' probation, or in the alternative, confinement not to exceed thirty-six months. Any sentence to be followed with lifetime supervised release. For the Court's consideration, Mr. Hodges (hereinafter "Nick") has provided a letter to the Court.[1] Additionally, Defendant submits the following**:**

### *The Two Sides of Nicholas Hodges*

There is a striking contrast between the offense conduct laid out in the PSR versus the person described in the character letters submitted.[2] One picture presents a "creep" who downloaded and viewed child pornography while working as a youth camp counselor. The other picture presents a gentle soul who cares for his friends and family and would lend the shirt off his back to a stranger if it would help.

---
[1] *See* Exhibit A, Letter from Nicholas Hodges
[2] *See* Exhibit B, Combined Character Letters

The Court must punish the offender, but at the same time, people should not be defined by their worst moments. Good people can do bad things. The task of determining a fair and just punishment is undoubtedly a heavy burden. We ask the Court to consider the other side of Nick, the gentle soul, when determining his future.

Nick is a young man. He is twenty-six years old, unmarried, no children, and no lasting romantic relationships. Nick grew up with a decent childhood. No abuse in the home, though he was bullied in school. His parents divorced when he was sixteen. The split was hard on him and his two siblings.

Nick is not a Missourian. He grew up in Virginia where his father is a pastor. Many of Nick's formative years were spent working with the church and church community. He built many lasting relationships based on his hard work and positive demeanor. Some of those individuals have stood by him, despite the charges, and have written letters in support.




Family is important to Nick and his siblings care for him and have written letters of support. That is why it was hard after the family more or less "split up". After the divorce, Nick's mother moved to Chicago and his siblings each went their own ways.

Nick went on to school to try to find a path in life. He has some school but has never excelled in academics, despite intelligence testing indicating he is above average. Nick's

passion is in the outdoors. It was this passion that brought him to studying parks and outdoor recreation.

That same passion, combined with his prior experience working in the church community, got him a job in youth camps running outdoor experience courses. Eventually that led to a job here in Missouri. Nick enjoyed sharing his passion with others, and his work reflected that. Over time he gained the respect of his coworkers and friends who saw him as caring, compassionate, and dedicated. For this young man, he seemed to be living his dream, modest as it may be.

Yet, despite his relatively healthy upbringing, and despite his outward projection of care and concern, Nick harbored a dark secret, pornography addiction. Nick can only be described as an awkward teen. He did not have many friends or romantic partners growing up. He was outgoing in his social group, but not a social overachiever. Sexual curiosity took him to porn at the young age of fourteen. Like many young men of his age, Nick grew up with early and unfettered access to the internet. The ease of accessing inappropriate material is alarming, and young Nick "took full advantage". Early access to adult porn led to him viewing material once or twice weekly. He became addicted fast.

Unfortunately, that porn addiction caused Nick to seek out more and more material. For some, the more they consume the more desensitized they become. The more desensitized they become, the more they need to seek taboo images. By sixteen years old Nick found child pornography. At the time, Nick was a child too. He was viewing images of similarly aged individuals. It is likely hard for a young person viewing these images to appreciate the harm and the horror of what is being depicted. So, the desensitization and addiction continued.

While it is no excuse, addiction to porn is they key contributing factor here. There is no evidence Nick viewed these images with malicious intent. Similarly, there is no evidence Nick has touched any children, or attempted to touch any children. He is not predator, but a consumer. Again, there is no excuse for his actions, but when judging this young man this distinction is important.

All of that came to an end when the police came to his work and arrested him. Nick has said he is glad he got caught. His incarceration has given him time to reflect, and he has realized the guilt and shame he should feel. It has given him the ability to face his demons. Nick has said his addiction was controlling him and he knows it was winning. Not anymore. Using that recognition as a starting place, Nick hopes to use it as a springboard for his rehabilitation.

Nick's hope is that the Court will consider his struggles with addition, and the positive character reflected by those who know him best as evidence of his rehabilitative potential. There were two sides to Nick. With the right support and treatment, he can finally be the person everyone knows he really is, and not live a life of addiction.

### *The Relevant 3553(a) Factors for Consideration*

## 1.  The nature and circumstances of the offense and the history and characteristics of the defendant.

All child pornography is illegal, morally repugnant, and disgusting. Yet, there must be some recognition that possessing child pornography is the "least serious" of crimes on the spectrum of child pornography offenses, production obviously being worse. Individuals who only possess child pornography are considerably less culpable than those

4

who produce the exploitative materials, and a "possessor is a marginal player in the overall child exploitation scheme."[3]

As stated, there is no evidence that Nick touched any children inappropriately or tried to do so. Indeed, he has zero criminal history. Nick has maintained stable employment. He does not participate in regular illegal drug activity. Nick is family orientated and would have a stable place to live and support mechanisms if released. His mother and stepmom have taken steps to secure him housing if released, and until that residence has been officially approved, Probation and Parole has indicated he could be placed in a transitional living center. His family support is one of his biggest assets.

Nick does not exhibit aggravating conduct that warrants an extended or lengthy prison sentence. In June 2021, the United States Sentencing Commission released a report titled "Federal Sentencing of Child Pornography: Non-Production Offenses".[4] This report updated the prior report which was issued in 2012 and compares the changes over time. In the 2012 report, the Commission claimed that 35.1% of receipt/possession of child pornography defendants in FY 2010 engaged in "criminally sexually dangerous behavior", such as contact offenses, prior to or during the instant federal offense.[5] The Commission says 48% of receipt/possession defendants in FY 2019 engaged in "aggravating conduct" during or before the instant offense.[6] Yet, only 30% of individuals sentenced for receipt/possession offenses in FY 2019 were sentenced within the guideline range and almost 68% of sentences were below the guideline range.[7]

---

[3] *United States v. Meysenburg,* No. 08-CR-361, 2009 U.S. Dist. LEXIS 82974, 2009 WL 2948554, at *8 (D. Neb. Sept. 11, 2009).
[4] Report available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf
[5] *Id*. at 45.
[6] *Id*.
[7] *Id*. at 5.

These statistics show us two critical data points here. First, many child pornographers engage in aggravating behaviors, such as contact offenses. But not Nick. The police thoroughly investigated to ensure he had harmed no child and found no evidence of that. This shows Nick is not as an egregious offender as many others. The second data point is that despite these concerns, many courts still sentence below the guidelines.

What we can infer from that data is that many courts find that those who don't engage in "criminally sexually dangerous behavior" or other aggravating conduct get the benefit of lower sentences. Nick asks the Court to join with other Courts and give him a sentence that reflects this distinction.

In sum, a lack of criminal history, stable employment history, quality home life and a support system all serve as indicators Nick would do well on probation and supervised release.

**2.     The need for the sentence imposed to reflect the seriousness of the offense and provide punishment and deterrence, balance against the need for rehabilitation.**

There are several consequences to this plea that demonstrates punishment and deterrence. Nick's life as he knew it is over. He has lost his job and will never be allowed to return to camp counseling again. All his college education and training are now useless. Nick's passion for the outdoors will likely be curbed because he will not be allowed to go into most state and federal parks. His activities will be highly limited on supervised release.

Nick is now a felon and a sex offender. Those labels will follow him until he dies. It is very difficult to find work as a convicted felon and ever harder for sex offenders. The Defense asks the Court to consider this impact when assessing his request.[8]

---

[8] *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008) (Defendant lost career because of case, was progressing in treatment. Defendant received probation with guideline range of 46-57 months).

6

Sex offender registration also serves as a deterrent and, in many ways, a punishment. Sex offenders are forever marked. Where they live and work are on public maps. Their vehicle information is public. If it becomes known that a sex offender lives in the area, there is an increased risk of harassment from the neighbors. No one wants them in their neighborhood. Even though a person's "debt" to society is paid after confinement, the public shaming will continue.

Registration comes with strict rules to promote deterrence. There are rules about where one can live. In nicer communities that radius is extended by ordinance to all but outlaw sex offenders from residing there. This limits housing options. There are rules about being in parks, participating in Halloween, and registering social media. In some states it is a crime to be around a minor unless you are married to the child's parent. While these laws perhaps promote some public good, it is Nick that must live with the rules hanging over his head, reminding him of his shame, for life.

Supervised release serves as deterrence. It is also for life. The program is strict, and the officers do an excellent job at monitoring and ensuring compliance. There are several resources and tactics that will be employed to make sure Nick follows the law. No computer or monitored computer access, no contact with minors, restrictions of activities, regular polygraphs, and indefinite sex offender treatment are all staples of supervised release. Nick will receive these conditions and they help meet the sentencing objectives without the need for lengthy incarceration.

The risk of recidivism is certainly a concern for any court at sentencing. Generally, the 2021 Sentencing Commission found that the overall recidivism rate for non-production

defendants is low (27.6%), and the rate of sexual recidivism is very low (4.3%).[9] The most common new offense type was "administration of justice", which includes offenses like contempt of court, failure to appear, obstruction of justice, and probation and parole violations.[10]

More specifically, Nick poses a low risk to reoffend, and is amenable to treatment in the community. To assist in the Court's decision, Nick underwent a psychosexual evaluation, at his own expense. The examination was conduct by Dr. Dean Rosen a forensic psychologist.[11] Dr. Rosen has experience in treating and evaluating sex offenders, including child pornography, and has testified in court on these matters.[12] The type of psychosexual evaluation performed on Nick is of the same nature of that performed by court professionals and corrections psychologists all over the country.

Dr. Rosen's testing found that Nick is a low risk to reoffend and can be managed in community-based treatment. Furthermore, he found that Nick recognizes the wrongfulness of his behavior and takes responsibility for his offense without minimization or blaming others, which is rare among sex offenders. Dr. Rosen found he possess the ability to regulate his behavior going forward, with treatment, and can abstain from pornography viewing. These findings are indicators of future success and should be considered when determining the sentence.

Because of Nick's initial inability to find a suitable home plan, he waived his right to request release on pretrial supervision, a request that would have been granted as it routinely is. Instead, Nick spent fourteen months in confinement. Approximately five months of that

---

[9] 2021 Sentencing Commission Report at 65.
[10] *Id.*
[11] *See* Exhibit C, Dr. Rosen Report
[12] *See* Exhibit D, Dr. Rosen CV

8

time was while the state charge, which has been dismissed, was pending but before the federal charge was issued. Therefore, Nick will receive no credit for that time before. That experience has been eye opening for Nick to say the least. He has gotten a heavy dose of shock time. This has reinforced to Nick the consequences of his behavior, and the risks if he was to violate the law in the future. Having the "benefit" of this shock time will only help Nick succeed on a community-based sentence.

**3.      The kinds of sentences available and the need to avoid unwarranted sentencing disparities.**

Given the effectiveness of conditions on probation and supervised release, the Court has several tools at hand to monitor, deter, and assist Nick. There are a wide range of outcomes possible, but lengthy incarceration is not needed to send this young man the message. The letters reflect, and Dr. Rosen's testing reflects, he is his own worst judge. A sentence which emphasizes conditions on release will have more value to Nick and society than a long, taxpayer funded, prison sentence.

Courts have found that the "parsimony provision" of § 3553(a) which states that a court should impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing is the central relevant policy when sentencing child pornography offenders.[13] Here, a community-based sentence, when considering the many conditions, meets that goal.

The plea agreement also addresses the need to avoid unwarranted sentencing disparities. There are several cases in the Eastern District of Missouri that have been resolved

---

[13] 18 U.S.C. 3553(a); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1114 (N.D. Iowa 2009).

9

with similar sentences, and in some cases, probation. Some of these cases involve aggravating facts that are not present in this case. In *United States v. David Latall*, Cause No. 4:18-CR-906 AGF, defendant received a plea agreement for a sixty-month sentence when defendant possessed thousands of images and video files and had been investigated for molesting his daughter.

Similarly, in *United States v. Kenneth Wells*, 4:17-CR-048 AGF, a plea agreement was accepted for sixty months for two counts of Possession of Child Pornography for a defendant who was found to be secretly videotaping the sixteen-year-old daughter of his fiancé while she was using the shower.

In *United States vs. Thomas Mueller*, Cause No. 4:18-CR-00353 RLW, the Court sentenced defendant to forty-eight-months and granted the Government's motion to dismiss transportation of child pornography charges where the defendant had a prior misdemeanor related to inappropriate touching of a minor.

Compare *United States v. Phillip Gruenwald*, 4:16-CR-00373 RWS, where the defendant received an eighteen-month sentence for one count of possession, followed by lifetime supervised release, for a defendant who worked at a high school and viewed child pornography in the classroom, but showed potential for rehabilitation due to positive work history and positive reaction to treatment.

In *United States v. David Johnson*, 4:18-CR-564 AGF, defendant pled to one count of possession of child pornography and received time served with ten years supervised release with six months of home detention and 80 hours of community service. The variance was given in that case due to relevant 3553(a) factors, including the defendant's positive psychosexual evaluation.

Other examples where Eastern District of Missouri judges felt probation was warranted for possession of child pornography include *United States v. Okada*, case number, 4:14-CR-361 CDP, and *United States v. Mathew Silies*, 4:16-CR-0099 JAR, in which both defendants received one-day time served with lifetime supervised release based on relevant 3553(a) factors. In this case, for all the reasons stated above, defense asks the Court to consider five years' probation, or in the alternative, confinement not to exceed thirty-six months.

**4.    Restitution and Ability to Pay Fines and Certain Costs.**

Defense Counsel would be remiss not to briefly address the economic impact on Nick. To date, no restitution has been requested. Based on financial information in the PSR, Probation & Parole recognizes that Nick does not have the ability to pay a fine.[14] On top of statutory fines, under 18 U.S.C. § 3014, the Court "shall assess an amount of $5,000" on non-indigent defendants convicted of certain crimes, including possession of child pornography. However, based on his lengthy confinement over the last fourteen months, Nick asks the Court to find him indigent and waive the assessment. If the point of the assessment is to add an economic punishment to deter child pornography, the economic punishment is already there. Given the consequences of a plea to Nick's ability to find meaningful work, Nick will be paying that cost for years to come.

*Conclusion*

Based on all the foregoing, Nick respectfully asks the Court to consider five years' probation, or in the alternative, confinement not to exceed thirty-six months. Nick no longer lives dueling lives. The "creep" is no more, though he will pay for that aspect of his life

---

[14] *See* Doc. #37, ¶ 67.

11

forever. Nick's focus is on living a good life and being the gentle soul that his friends and family see.

Nick's lack of criminal history, loss of career, the impact of the sentence on his employment prospects, the deterrence provided by registration/supervision, his rehabilitative potential, and his positive psychosexual evaluation present compelling reasons why the requested sentence is appropriate.

WHEREFORE, for the foregoing reasons, Nicholas Hodges respectfully requests the Court follow the Plea Agreement, vary downward from the guideline range pursuant to 18 U.S.C. §3553(a)(2) factors, and sentence Defendant justly.

Respectfully submitted,

FRANK, JUENGEL & RADEFELD,
ATTORNEYS AT LAW, P.C.


By */s/ Joseph W. Flees*
JOSEPH W. FLEES (#60872MO)
Co-Counsel for Defendant
7710 Carondelet Avenue, Suite 350
Clayton, Missouri 63105
(314) 725-7777
jflees@fjrdefense.com


### CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Jillian Anderson
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

*/s/ Joseph W. Flees*
JOSEPH W. FLEES